### IN THE

## Supreme Court of the State of Georgia,

## AT SAVANNAH,

## JUNE TERM, 1861.

PRESENT—JOSEPH H. LUMPKIN,  
RICHARD F. LYON, } JUDGES.  
CHARLES J. JENKINS,

---

JOHN SILCOX and WIFE, plaintiffs in error, *vs.* JAMES HARPER and JOHN NELSON, executors of Matthew Nelson, deceased, and JOHN B. BIRTHWHISTLE and MARGARET CHAMBERLAIN, trustees of the Braithwaite School, defendants in error.

(Mr. Justice JENKINS did not preside in this case.)

Testator, by his last will, directed that his executors invest $2,000 00, and that the income of the same be remitted annually to the trustee of the Braithwaite School, in the parish of Ripon, and county of York, in England, said trustee to be elected trienially by the parents and guardians of the children legally entitled to the use of the school. The legal title to said school was in John B. Birthwhistle and Margaret Chamberlain, as trustees, under decree in Chancery, and the deeds under which the charity was originally founded. Under the deed of endowment these trustees could appoint and remove the teacher of the school at pleasure, could select three poor children annually to have the benefit of said school, etc. The will of testator provided that

Silcox and wife *vs.* Harper, Nelson *et al.*

the trustee elected to take the income of his bequest, should have a vote in the selection of the teacher, and have the privilege of admitting to the use of the school ten poor scholars, etc. After the bequest was made known to the trustees in England, they called a meeting of the persons entitled to the use of the school, for the purpose of electing a trustee to receive this bequest, and to apply it according to the directions of the will, etc. One of the trustees having the legal title, to-wit: John Barton Birthwhistle, was elected such trustee, who accepted the office, agreeing, on the receipt of the bequest, to apply and administer the same for the uses and purposes set forth and contained in the will of testator. The heir-at-law filed a bill against the executor to pay over said bequest, on the ground of its uncertainty, and the impossibility of carrying the same into effect, because the bequest was repugnant to the provisions and condition of the foundation of said school, etc. To this bill John B. Birthwhistle and Margaret Chamberlain, as trustees, were made parties defendants. *Held*,

1. That it was no error in the Court to allow such portions of the answers of the trustees as set up the alternative right of said trustees, of John B. Birthwhistle, as trustee, with the exhibits referred to supporting that title, to be read to the jury as a part of the pleading.

2. There is no error in the refusal of the Court to give a charge requested when no injury results to the party making the request, in consequence of such refusal.

3. It is not a good reason to deprive the Braithwaite School of the benefit of the bequest in its favor, that the trustees violate their duty.

4. Although the conditions imposed by the testator in his bequest are a little inconsistent with the original charity, they are not so repugnant thereto as to defeat any of the intentions of the original founders, and the trustees having agreed to accept the bequest as made, which they were not bound to do, but might have rejected it, when the heir-at-law would have taken, they are bound to adhere strictly to the trust, and a Court of Chancery will not disturb it.

5. The charity, and the beneficiaries thereof, being in England, it was proper for the Court to direct the whole fund to be transferred to the trustees in England, to be there invested for a proper execution of the intentions of the testator.

In equity, from Richmond county. Tried before Judge HOLT, at the December, Term, 1860.

The facts are stated in the opinion of the Court.

SNEAD, for plaintiffs in error.

STARNES, for defendants in error.

Silcox and wife *vs.* Harper, Nelson *et al.*

*By the Court.*—LYON, J., delivering the opinion.

Matthew Nelson, by his last will and testament, after some specific legacies in favor of his wife Charlotte, and nephew John Nelson, and directing the sale of the balance of his estate by his executors, made the following bequest:

"I also give and bequeath to my wife Charlotte, one-third part of all the rest and residue of my estate not heretofore devised away, to be paid to her within a reasonable time after the sale of my estate. My will and devise is, that one other third part of my estate not hereinbefore devised away, may be equally divided between my brother Peter, and all my nephews and neices, and the three children of my beloved Charlotte, to be paid to them as soon as convenient after the sale of my estate. My will and desire further is, that the remaining third of my estate not hereinbefore devised away, may be disposed of as follows: that is to say, that the sum of two thousand dollars be invested in stock, by my executors hereinafter named, and the income of the same be remitted annually to the trustee of the Braithwaite school, in the parish of Ripon, and the county of York, in England, for the use of said school, and the purposes hereinafter mentioned. The trustee of said Braithwaite school to be elected triennially by the parents and guardians of the children legally entitled to the use of said school, and said trustee to have a vote in the selection of the teacher or teachers, and to have the privilege of admitting to the use of the school ten poor scholars whom he considers the most deserving.

My will also is, that the first year's income, of said sum of money, may be applied to the repairs of said school-house and its appurtenances, and that the income of all subsequent years from said sum, two-thirds be allotted to the teacher or teachers, and the remaining third be appropriated to paying the expenses of three respectable weekly newspapers for the use of the school and the neighboring inhabitants, and the purchase of books for the school or to form a library, and for the purchase of stationery for the use of said school."

This will was admitted to probate in the Ordinary's office

of Richmond county, upon the application of the executors, John Nelson and James Harper, in 1840, and a sale made by them of the testator's property, not specifically disposed of by the will, in May, 1847. This bill was filed by John Silcox, who had intermarried with Charlotte, the widow of testator, and his wife, Charlotte, against the executors, John Nelson and James Harper, to the April Term of Richmond Superior Court for the year 1857, calling upon the executors for an account, and to pay over to them as sole heir-at-law in right of the wife, the legacy of $2,000 00 to the Braithwaite school, as a lapse legacy, alleging that there was no such person or legally constituted corporation in existence, or ever had been, entitled or authorized to take such bequest, and that no such claimant had, up to that time, presented any claim to said sum; nor had the executors been informed of the existence of any such person. Afterward, and at the May Term, 1858, of the Court, before final decree, Margaret Chamberlain and John Burton Birthwhistle, as the trustees of the Braithwaite school, at Dacre, with Beverly in the parish of Ripon, county of York, England, applied in Court, by their attorney, and upon application, were made parties defendants to the bill. Hereupon the complainants, on motion, amended their bill, still insisting upon their right to fund as a void and lapsed legacy, and alleged, that there was not, at the death of the testator, or ever had been, any such Braithwaite school, in the parish of Ripon and county of York, England, as described in the will, that legally existed either by letters patent or by Act of Parliament; that the said Margaret and John Burton were not trustees legally authorized to take and hold the bequest as that attempted to be made by the will; that such trustees could not legally take such bequest, limited and unrestricted as it was by the will under the fundamental law of said school, of which they were trustees; that "the Braithwaite school," the intended donee of testator's will, was the Braithwaite school in the parish of Ripon, and county of York, England, and not the one of which defendants, Margaret and John B., were trustees, which was a different school, that is to say, one situated

and located in the parish of Dacre, or some other parish in England; that the trustees parties hereto are not elected in the manner prescribed by the testator, nor is there any authority for such election; that the objects of testator's intended bounty are so vague and uncertain that it is impossible to ascertain who they are, and that it is impossible to carry testator's bounty into effect as intended, that therefore the legacy lapses. The original and amended bills were answered by the defendant, by the executors jointly, and as no point arises on their answer, no notice is taken of it. The defendants, Margaret Chamberlain and John Burton Birthwhistle, answered jointly, that there is, and for many years has been, in existence and in operation, in the parish of Ripon and county of York, England, a school denominated and known as the Braithwaite school, of which they are, and since the 9th of December, 1831, have been, the legally and regularly appointed trustees and managers thereof; that it was constituted and endowed by conveyance, dated 21st January, 1778, between William Day and Peter Buck, of one part, and John Day of the other; that these respondents were appointed trustees to execute the trusts of such deed, by order of the Vice Chancellor of England, in a proceeding instituted in that Court for that purpose, on the 5th of August, 1831; that said Court, and at the same time, appointed and ordered John Coverdale to convey and assure to respondents the estate and premises to said charity appointment, and that said Coverdale, in obedience to said order in chancery, did, on the 8th and 9th days of December, 1831, by indenture of lease and release, convey and assure to respondents, upon the trusts in the conveyance from Day and Buck expressed, and that they are *bona fide* claimants of said bequest, against the complainants and their co-defendants, and in their character as trustees of the said Braithwaite school, in the parish of Ripon and county of York, England, and for the use and advantage of that very benificent charity; that there is not, in the parish of Ripon, county of York, England, any school bearing that name, the Braithwaite school, or answering to that description, other than that

whereof respondents are trustees; that the same is the school held by the testator in his testamentary intent and designated in said clause of his will at the time of the making thereof; that the testator had been educated at said school, and by said clause intended, no doubt, to compensate said school for the benefits he had derived therefrom, and confer a lasting benefit on his native parish; that as trustees of said school, they have the ability and willingness to apply the income and profits of the bequest as testator hath directed, and verily intend to do so; that on the 29th day of March, 1859, a meeting of all the parents and guardians of all the children entitled to the use of said school, was had in the school house for the purpose of electing a trustee of said school for three years, to receive and apply the said legacy and income thereof to and in accordance with the provisions of the will, when respondent, John Burton Birthwhistle, was unanimously elected as such trustee and for such purpose, who had accepted the appointment, and said John Burton, answering for himself, says that, if said bequest shall be paid to him he will duly apply the same in execution of the trusts and directions of the will, and the trustees pray that the bequest be paid to them jointly, or to John Burton Birthwhistle solely, as trustee or a trustee of said school.

To this answer were attached, as exhibits, copies of the deeds from William Day and Peter Buck to John Day, of 1778, copy of proceedings, and order in Chancery, in the matter of the Braithwaite school, appointment of trustees to fill vacancy, etc., of the deeds from Coverdale to the trustees, and proceeding of the parents and guardians of children entitled to the use of the school in the election of a trustee, and his acceptance of the same. All of which on the trial were read in evidence in support of the answer, from which it appeared that William Day and Peter Buck, in 1778, conveyed to John Day, his heirs and assigns, and certain messuages and premises called Deering, situated in Dacre with Beverly, in the county of York, with nine beast or cattle gates, or depasturing for nine beasts or cattle, in and upon a certain stinted pasture, called Dacre pasture, and also the sum

of £140, upon trust, that the said William Day and Peter Buck lay out and expend the balance of the said sum of £140, after deducting certain expenses, in the erection of school houses, and such other buildings as should be necessary and proper to be enjoyed with the same, in some convenient part of the township of Dacre with Beverly, and they, as trustees, their heirs, executors, administrators and assigns, and the trustees for the time being of the said freehold and leasehold premises should apply and dispose of the balance of the clear yearly rents and profits of the premises after payment of repairs and necessary improvement of the premises, " to such persons as shall from time to time be appointed school master by the said Day and Martin, or the survivor, or the trustees for the time being, of the said trust estate and premises," which master, so to be appointed, is to teach and instruct in reading the English tongue, and in writing and arithmetic, the children of those parents who, for the time being, shall reside in the hereby bargained and sold messuage, and in three other messuages or dwelling houses, called Deer Jug houses, and four houses adjoining to the north side of a common called Braithwaite, one house called the Hole House or New House, and three houses adjoining to the south side of said common, called Braithwaite.   All which houses situate and standing in the township of Dacre with Beverly aforesaid ; and also the children of those parents who, for the time being, shall reside in any houses now erected or hereafter to be erected in Padrido, in the township of Three Cross, in the said county, and any poor children, not exceeding three in number, which the parties of the said trust and premises, for the time being, shall think most fit and proper to be instructed at the said school ; that no person, save a single man, shall be elected master of said school," etc.   It was also provided therein that in case of a vacancy by death, resignation, or refusal to act, the survivor should forthwith nominate a successor, and so *ad infinitum,* so that the number of trustees should always be kept at two.   It further appeared, from the proceedings in the Court of Chancery in England, " in the matter of the Braithwaite school,"

from the report of the master, in rotation to whom it had been referred by the Court, to inquire and state to the Court of what the charity estates and premises consist, and in whom the legal estate therein is now vested, and in whose occupation the same now are, and under what circumstances the same have been occupied, and to approve of proper persons to be the trustees of the said estate and premises, etc; that the school house had been built by the original trustees, William Day and Peter Buck, on Braithwaite Common, within the township of Dacre with Beverly. It further appeared, though not from the report of the master, that the legal estate in the said charity estates and premises were outstanding in John Day in the indenture of 21st January, 1778, or in his heirs or devisees and personal representatives, according to the nature of the estates comprised in said indenture respectively ; that the trusts had become vacant by the death of one of the acting masters, and the lunacy of the other. Margaret Chamberlain, widow, and John Burton Birthwhistle, having been proposed as trustees, and the master finding them fit and proper persons, and approving of them to be trustees of said charity estate and premises, were, by the order of the said Court of Chancery, appointed trustees to said charity estate, and it was also ordered that John Coverdale, of Gray's Inns, in the county of Middlesex, gentleman, be appointed to convey and assign the said estates and premises to John Burton Birthwhistle and Margaret Chamberlain, their heirs, executors and administrators, upon the trusts expressed and declared of and concerning the same, in and by said indenture of 21st January, 1778, in the place of said John Day, or his heirs or devisees, and personal representatives. It further appeared, that John Coverdale had subsequently, by deed of lease and release, conveyed the premises to them, in accordance with said order in Chancery. By the other paper it appeared that the parents and guardians of the children entitled to the use of the Braithwaite school, had assembled in said school house on the 29th day of March, 1859, and in the presence of one Thomas B. Calvert, elected John Burton Birthwhistle " to be the trustee of the school for three years

from the date hereof, for the purpose of receiving all and every the monies and income which, under or by virtue of the trusts and bequests of the will of Matthew Nelson, (formerly of Hole Bottom, otherwise Hole House, otherwise New House, on the south side of Braithwaite Common, in the said district of Dacre, and parish of Ripon, but afterwards of Augusta, in the State of Georgia, in the United States of America, deceased,) are now or shall be or become payable to the trustee, or for the use and benefit of the said school," etc., and the acceptance of the said trustee in these words: " And I, the undersigned, John Burton Birthwhistle, do hereby accept the said office of trustee of the said school for the purpose aforesaid, and I declare that on receiving such monies and income respectively, or any of them, I will duly apply and administer the same for the uses, purposes and objects last aforesaid, or for such and so many of the said uses, purposes and objects as are now capable of taking effect." This last paper, or the contents thereof, was supported by the evidence of the witness thereto, Thomas B. Calvert, taken by interrogatories and commission, who says that he was present at the signing of the same by the persons whose names are thereto signed, being the persons who were entitled to vote for trustee, the parents and guardians of the children who were entitled to the use of the Braithwaite school, and the purposes for which the paper was signed and delivered by the persons signing the same, was the election and appointment of the said John Burton Birthwhistle to be a trustee, etc.; that Birthwhistle was by them unanimously elected. Calvert also testifies that he knows the Braithwaite school in England; that said school is situated in the township of Dacre, otherwise Dacre with Beverly, in the parish of Ripon, in the county of York, in England; that the school is in operation, and that the present trustees are John Burton Birthwhistle and Margaret Chamberlain; he, the witness, is a clergyman of the Church of England, and resides in the county of York, and is an incumbent of Thornwaite and Padrido respectively; personally knew each of the persons who subscribed to said instrument, and knew them to

be parents of children attending the Braithwaite school, by visiting at the houses of most of them, and knowing the residences of all, and that they reside at places contemplated by the deed; he knows of his own personal knowledge that Braithwaite school, in Dacre, in Yorkshire, and Braithwaite school, in the parish of Ripon, in the county of York, in England, is the same in description, and there is no other Braithwaite school within the parish of Ripon. Robert H. Otler, whose testimony was taken by interrogatories and commission, testifies, that he saw John Burton Birthwhistle sign the paper already referred to, being his acceptance of his appointment and election by the parents, etc., as trustee, to receive and apply the money under the bequest of testator, etc.

1. During the progress of the trial, the complainant moved the Court to exclude from the pleadings such portions of the answers of defendants, trustees, as set up the alternative right of said trustees, and that of John Burton Birthwhistle, as trustee under the will of testator, with a paper therein referred to as an exhibit, containing the actions of the parents and guardians of children entitled to the use of the Braithwaite school, on the ground that John Burton Birthwhistle was not a party to the proceeding in that character. The Court refused the motion, and allowed the same to be read as a part of the pleadings. Complainants excepted, and this is the first ground of error complained of.

We think there was no error in this decision. The defendant, Birthwhistle, was a party defendant, as trustee, and in his answer distinctly set up his title to the fund in controversy, as trustee under the will of testator, in right of his appointment according to the directions of the will; that he was a joint defendant with and joined in this answer with his co-trustee, under the appointment to fill the trusts of the original charity, made no difference whatever—there was no necessity that he should formally have been made a party defendant jointly with Margaret Chamberlain, and then again formally as sole trustee under the will. He was before the Court as a trustee, and in that capacity had a right to be heard and to take all that he was entitled to, either jointly

or separately in his own right, as might be adjudged by the Court.

2. Counsel for complainants requested the Court to charge the jury, " that the defendants, Birthwhistle and Chamberlain, trustees, were not entitled to recover, because, by the language of the bequest they were not parties interested.". The Court refused to give the charge, and this is alleged to be error. Whether the charge was erroneous, it is not necessary to enquire now, as no recovery was had by them, and therefore no injury resulted to the complainant so to charge.

3. Complainant's counsel further requested the Court to charge the jury, " that if it appeared, from the evidence, that the trustees of the Braithwaite school were violating the provisions of the trust, in employing a married man as a teacher, then they had no right to recover." This charge the Court refused to give, and we think properly, because there was no evidence to warrant the charge, and if there had been evidence of such fact, the Court ought to have refused so to charge notwithstanding, because that would have been no reason to deprive the school of the testator's bounty. He might have known personally of such departure from the provisions of the original charity by the trustees and approved of it.

4. Counsel further requested the Court to charge, " that to enable any trustee to take, in England, under the trust of Matthew Nelson's will, it would be necessary that proceedings be had in the Court of Chancery, modifying the original trust, so as to incorporate the conditions of the will into the original trust, and *then* elect a trustee as provided by the will ; but that, by the laws of this State, such proceeding is inadmissible to the injury of the rights of the heir-at-law, and that a legacy defective in language for provisions to carry into full execution, is void."

The Court below properly refused to give this charge. The request assumes, that the directions in the testator's will, as to the application and appropriation of his bequest in favor of the Braithwaite school, are inconsistent and in conflict with the original foundation of the school by Day and Buck, and I

do not know but that they are, to some extent at least, in this: the trustee to receive this bequest is to be appointed differently from the mode prescribed by the founders of the charity, in fact it is probable that the testator intended that the trustee designated by him should be in addition to those who held the legal title to the estate, but to be clothed with specific powers and duties that in no wise should interfere with or control the authorized action of the properly constituted trustees of the school. Again, by the foundation of the school, the trustees named and their successors were to appoint the teacher of the school, and to select poor children, not to exceed three in number, to be educated at said school. The will directs that the trustee to receive the income of the legacy shall be elected triennially by the parents and guardians of the children entitled to the use of the school; that he shall have a voice in the selection of the teachers, and the privilege of admitting to the use of the school ten poor scholars, whom he considers the most deserving. Now, while it may be admitted that these provisions are somewhat inconsistent with the original charity, they are not so repugnant thereto as to defeat any one of the intentions or objects of the founders. On the contrary, these intentions of the testator may very well be grafted on to the fundamental provisions of the school and the whole performed. Both the original charity and that of testator's have one common object, the education of the poorer classes in that locality. This being the case, there was no impropriety in acceptance by the trustees of the Braithwaite school of this legacy; indeed, we think it was clearly their right, as well as duty, to have done so. In saying that it was their duty to accept the legacy, we do not mean that it was so legally, but only morally so, for, of course, they had the right to reject the legacy upon the terms imposed; in that event it would have been relinquished to the heir-at-law, but having accepted it, they are bound to adhere strictly to the trust, and the Court of Chancery will not disturb it. Attorney General vs. Cain's College, 2 Keen, Eng. Ch., 143.

The Court charged the jury, "that if they found there

was such legatee as the Braithwaite school in existence, they might find in favor of the trustees of that school, the fund to be turned over when the Court of Chancery of England, or other legal authority, should provide for the recognizing of such trustee as provided by the will of Matthew Nelson," and that they, the jury, "as a component part of the Court of Chancery, had the power to find in such manner as would carry out the intention of the testator in the bequest to the Braithwaite school." The jury decreed, "that the complainants are not entitled to the fund in dispute, but that the legatee, the Braithwaite school, is entitled to have, receive and enjoy the same in pursuance of the testamentary intention of Matthew Nelson, deceased. We further find and decree that interest be allowed to the same on the sum of two thousand dollars, at the rate of seven per cent. per annum, from the 4th day of ——, 1847, until the 1st day of January, 1848, and annually, at the same rate, for six years thence next ensuing, and after the expiration of said six years from the said 1st of January, 1848, the computation of interest shall be at and after the rate of six per cent. per annum, to be computed at that rate annually thereafter. We further find and decree, that the amount of *interest so accumulated be immediately paid over to the Hon. Charles J. Jenkins, to be remitted to John Burton Birthwhistle, trustee, for the benefit of said school,* and that the principal be retained by the executors and invested in some safe way until they ascertain, by documentary evidence, properly authenticated, that the High Court of Chancery, in England, have affirmed and approved the same John Burton Birthwhistle as such trustee, or appointed some other person as trustee to receive and administer said fund in pursuance of the testamentary intention of the testator, when we find, and decree and direct, that the said executors do pay and turn over to such trustee, the principal fund so retained, with all interest accumulated."

5. To the charge of the Court so made complainants excepted, and having moved for a new trial on the ground that the verdict was against the law and the evidence, which was refused, they allege both the charge given and decree

to be erroneous. There was no error in the charge or the finding. On the contrary, as the trustees of the Braithwaite school had accepted the legacy on the terms and conditions imposed by the testator, and had solemnly declared their intention to carry out the same, they were entitled to a decree for the legacy, and as John Burton Birthwhistle, one of the trustees of the school who held the legal estate therein, had been elected the trustee in pursuance of the directions of the will, had accepted said trust, and had declared his intention to carry out the provisions of the will of the testator in respect to this legacy, it was right and proper that the income arising from said fund should be paid over to him. Nor was there any irregularity in the selection by the jury of the Hon. Charles J. Jenkins to receive the money and remit it to the trustee. It was necessary that there should be some method adopted for the transmission of the funds to the trustee, and the selection of this gentleman, as the officer of the Court, for that purpose, insured its being rightly applied.

This charity was to be established in England, and was to be executed by persons there. Now, as there was some question upon the original foundation, we think it was proper that the Court below should decree, that when the High Court of Chancery in England had recognized John Burton Birthwhistle as testator, or appointed some person to receive and administer this fund in pursuance of the testamentary intention of the testator, the whole fund should be transferred to such person in England, and leave it to the local tribunals there to see to its due administration. There is no error in this record, and were we to do otherwise than to affirm this judgment, we would defeat the plain intention and most laudable purpose of the testator.

Let the judgment be affirmed.