## THOMPSON v BOARD OF TRUSTEES OF WHITE CROSS HOSPITAL et

Probate Court, Franklin Co.

No. 93995. Decided Aug. 7, 1942.

### OPINION

By McCLELLAND, J.

This matter comes before this Court upon a petition for the construction of a will and for declaratory judgment in certain particulars, which will be hereinafter discussed. The particular portion of

516

the will under investigation contains the following language:

"All the rest, residue and remainder of my estate, I give, devise and bequeath to the, Trustees of White Cross Hospital, Columbus, Ohio, and I direct that said Trustees shall with this bequest establish a fund to be known as "The Frank E. Thompson Fund,' the income from which shall be used exclusively for the medical care of the poor, the principal of which shall be continuously maintained by said Trustees for said purpose."

The first question propounded by the petitioner is: Does Item 22 of said will create a testamentary trust? If the answer is in the affirmative, then the question is whether it is a private trust or a charitable trust.

Whether a trust is a private trust or a charitable trust either must possess certain characteristics. In Scott on Trusts, Vol. 1, at Section 2.3 we find the following language:

"It is 'a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.' In this definition or description the following characteristics are to be noticed: (1) a trust is a relationship; (2) it is a relationship of a fiduciary character; (3) it is a relationship with respect to property, not one involving merely personal duties; (4) it involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another; and (5) it arises as a result of a manifestation of inten-

tion to create the relationship. The combination of these things characterizes the notion of the trust, as that notion has been developed in the Anglo-American law."

This statement of the elementary concept of the trust is also found in 40 O. Jur., Trusts, §2. We also find this proposition supported by the author of Thompson on Wills in Chapter 23, at Section 415, and also in Lifetime Edition of Page on Wills, at Section 1176. We are therefore compelled to come to the conclusion that █ the testatrix has by her will created a valid trust under the law of Ohio as it now exists.

We therefore then come to the next question to determine whether or not the trust created is a private or a charitable trust. It is to be noted that the devise goes to the Trustees of White Cross Hospital of Columbus, Ohio. The White Cross Hospital is a corporation organized and existing under the laws of the State of Ohio. A copy of its constitution or articles of incorporation have been furnished the Court, Articles I, II and III of which read as follows:

Article I. This Association shall be known as the White Cross Hospital Association of Ohio.

Article II. The Office of the Association for the transaction of its business shall be located in the City of Columbus, Ohio.

Article III. The objects for which the White Cross Hospital Association is organized are to furnish a home and hospital for the sick and needy, irrespective of sect or creed, relieve the necessities of persons requiring any assistance by any charitable means that may seem proper, and to educate and train nurses for the care of the sick.

Article IV. The government and control of this Association shall be vested in a board of twenty trustees, the election, office and qualification of whom are therein set forth.

Article V provides that the title to the property, both real and personal, shall be vested in the Board of Directors, who shall hold such property in trust for the use of the Ohio Annual Conference of the Methodist Episcopal Church and according to the usages and discipline of the Methodist Episcopal Church as it now is or as it from time to time shall be established, made and declared by the lawful authority of said Church.

As we have hereinabove stated, a trust whether it is a private trust or a charitable one must possess certain characteristics. The distinction between a ▮▮▮▮▮ private trust and a charitable trust is not only in its formation but also in the manner of its administration and execution. If a private testamentary trust has been created, it is necessary that the trustee under the law of Ohio qualify and administer the trust under the direction of a probate court. If the trust is a charitable trust, a different method and means of administration is invoked.

"A charitable trust is created in the same way as that in which any other trust is created; and its operation and effect are much the same as those of any other trust.

There are some striking differences between the charitable trust and other trusts. The charitable trust does not need the same degree of certainty as to the beneficiaries that other gifts do. If such a gift vests within the time fixed by law, it is not governed by the rule against perpetuities or in restraint of alienation in some cases in which other gifts would fail because of such rules."

Page on Wills, Lifetime Edition Vol. 3, page 553.

"The general nature of the purposes which may be classed as 'charitable' seems reasonably clear, on the one hand; but, on the other, it is impossible to enumerate every kind of charitable purpose for which a gift might be made at the present time, and still less is it possible to forecast the future, and to enumerate the classes of charitable purposes which shall be sufficient for all eternity. To put it broadly, and therefore vaguely, a charitable purpose is one which attempts the improvement of man and of the conditions, physical, economic, moral and spiritual, which surround him.

While relief of poverty is charitable and while the word 'charitable' is said, prima facie, to refer to gifts for the relief of the poor other purposes also may be charitable. It is not necessary that the will should distinguish between the rich and the poor. While lightening the burdens of government is charitable, this is not an essential element of a charitable gift."

Page on Wills, Lifetime Edition, Vol. 3, page 556.

"Devises in aid of the poor and destitute are always upheld as charitable devises if the other requisite elements of a charity are present. The beneficiaries may be limited to the poor of a certain area, or religion, or occupation, or nationality, and in some states the beneficiaries may be restricted to the poor of a certain church, or to the poor of a noncharitable

association. In some states a devise to the poor of an unincorporated church or association is held void as too indefinite. Such devises are upheld even where taxation already provides for the poor who are to be benefited by the charity.

A gift for the benefit of the poor which is otherwise valid is not rendered invalid by describing them as the 'worthy poor', 'poor and deserving,' and the like; nor by describing them as 'poor and unfortunate' or 'worthy and unfortunate.'

A gift to the Red Cross has been held to be a valid gift to a public charity."

Page on Wills, Lifetime Edition, Vol. 3, page 568.

"Gifts to establish hospitals, or to establish homes and asylums for the orphan, the aged and the infirm, or to furnish a supply of necessaries or aid to the sick, or a free medical dispensary, or for sending children into the country, are charitable. A hospital, incorporated without capital stock, and not for any financial benefit of its members, is a charity within this sense, as is a devise for the benefit of the disabled soldiers and seamen of the United States, who were engaged in the war of the rebellion. A gift of a farm in trust for a county home for orphans and the friendless is not invalid because it provides for the establishment of a church therein.

A gift to advance the study of medicine in order to promote health, prevent disease and the like is a valid gift for charity."

Page on Wills, Lifetime Edition, Vol. 3, page 570.

Had the testatrix made a gift generally to the Trustees of White Cross Hospital, our question would have been much more simple than we find it to be. The provision of the will hereinbefore quoted puts three restrictions upon the donee or trustee, and that is, first, that the devise shall be used to establish a fund to be known as "The Frank E. Thompson Fund"; second, that the income from it shall be used exclusively for the medical care of the poor; and, third, that the principal of same shall be continuously maintained for said purpose.

Some light may be thrown upon the solution of this question by reference to 10 American Jurisprudence, subject Charities, at page 610, wherein the author uses the following language:

"There is a broad distinction between a gift direct to a charity or charitable institution already established and a gift to a trustee to be applied by him to a charity. In the first case the court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but in the latter case the court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity. Gifts to religious and charitable corporations to aid in carrying out the purposes for which they are organized, whether by expending the principal of a bequest or the income of a bequest to be invested in perpetuity, do not create a trust in any legal sense, do not offend against the statutes of perpetuities, and are not to be judged by any of the well-known rules pertaining to the law of trusts as applied to private individuals.

There are authorities which have used the term 'trustees' and 'donees' interchangeably in speaking of a charitable use. Some courts have also taken the position that a public charity, whether incorporated or not, is merely a trustee. Similarly, a devise to a corporation for charitable uses has been held to operate as an appointment rather than a bequest."

10 American Jurisprudence, page 610.

"A gift to an organization, corporation and the like which, by the terms of the will, is made for the purpose of enabling it to carry out some or all of the purposes for which it was formed, is an absolute gift and does not create a trust."

Page on Wills, Lifetime Edition, Vol. 3, page 508.

Some additional light is also thrown on the solution of this question in the following:

"While it is stated that any gift to a religious or other charitable society is a gift in trust for its proper objects, and that, although the instrument of gift makes no provision for a conveyance to trustees, the donated property becomes immediately charged with the trust in the hands of either the executors or the heirs, generally speaking, a provision for a direct gift to charity or to a charitable organization is not a trust in the eyes of the law; it is a charitable donation. Such a provision is not rendered the less absolute or converted into a trust because the donor expresses a desire, request, or hope for, or suggests, a particular use or application, or because the provision specifies that the do-

nation shall be employed for one or more of the purposes for which the charitable organization benefiting thereby was formed, or even that the bequest shall be in trust for such a purpose. Also, a gift of the income from property to a charity without limitation as to the time of enjoyment and no other disposition of the corpus, is in legal effect a gift of the corpus, and a trust is not established by a provision merely that money or property be given to the trustees of a particular charity, or by an instrument which gives the same person both the legal estate and the beneficial interest."

14 Corpus Juris Secundum, pages 498 and 499.

"Property may be devoted to charitable purposes not only by transferring it to trustees for such purposes, but also by transferring it to a charitable corporation for any of the purposes for which the corporation is organized or for a particular one of its purposes. Where property is given to a charitable corporation, a charitable trust is not created, even though by the terms of the gift the corporation is directed to hold the principal forever and to devote the income only to the accomplishment of the purposes of the corporation, and even though by the terms of the gift the corporation is directed to use the property only for a particular one of its purposes. Thus, if a gift of property is made to an incorporated educational institution with a direction to invest the principal and use the income in paying the salary of a professor of mathematics, a charitable trust is not created, but the institution is the owner of the property, though it holds it for this particular charitable purpose.

Although a gift to a charitable corporation for one or for any of its purposes does not create a charitable trust, the rules of law which are applicable are to a large extent those which are applicable to charitable trusts, since the ends to be served are the same. The differences are due to the fact that different juridical devises are employed.

Where property is given to a charitable corporation, the disposition is valid although the corporation is directed to hold the principal and to devote the income perpetually to the accomplishment of the purposes of the corporation and although the corporation is directed to use the property only for one of its purposes. The Attorney General can maintain a suit not only to enforce a charitable trust but also to compel a charitable corporation to apply property held by it to the charitable purposes for which it is given to the corporation.

Restatement of the Law of "Trusts, page 1093".

In the light of the rules hereinbefore set forth to what conclusion can we come with reference to the administration of the corpus of the trust created under the will of Miss Thompson? As we have hereinbefore stated, the devise is not to the Trustees of White Cross Hospital generally. It is a devise with three restrictions or conditions attached thereto. There is no question but that the White Cross Hospital is an institution of public charity. It has been so recognized by the Inheritance Tax Department of the State of Ohio, and gifts to it are generally exempted because of their charitable nature. But here is a gift to an institution of public charity with certain restrictions which the Trustees cannot ignore

and which must be complied with by the Trustees. In the light of those facts we are compelled to come to the conclusion that the donee takes this property subject to those conditions and in taking said property subject to those conditions the property certainly does not become a part of the general assets of the corporation. We can conceive of many gifts being made to the White Cross Hospital in order to carry out the general purposes for which it was incorporated, but this gift was a gift to White Cross Hospital with certain restrictions in regard to the integrity of the corpus and the application of its income. There is no question but that White Cross Hospital under the terms of its charter may render free medical aid to the poor. The provision of the gift is entirely within the scope of the corporate powers of the Hospital.

Although we have been unable to find a reported case in Ohio which is directly in point, we do find an unreported case which was decided by the Common Pleas Court of Madison County, Ohio, on October 18, 1932. In that case the identical question was raised as to whether or not White Cross Hospital was an institution of public charity. The litigation concerned a bequest to the White Cross Hospital Association of Ohio. We have been furnished with a copy of the pleadings in that case, together wth a copy of the Court's decision. The White Cross Hospital Association of Ohio filed its petition against Henry C. Griffin and some thirty-three other defendants to quiet title to certain real estate claimed by it as a devisee under the will of Sarah J. Johnson, deceased. Answers were filed by certain of the defendants denying the jurisdiction of the Probate Court

to transfer the title to said property to The White Cross Hospital Association, and in which the defendants contended that the Probate Court should retain jurisdiction of said property during the continuance of the trust. The will contained the following language:

"Item Eight. I do hereby give, devise and bequeath unto my niece, Maud M. Griffin, for and during the period of her natural life, all of the farm consisting of about two hundred and ten and one-fourth acres of land, * * * * ; and at her death then to any child or children of her body born in lawful wedlock, that may survive her, and in case that none such do survive her, or at the death of them in case there be any such then, and in either of said cases, the said land is to be sold to the best advantage practicable and the net proceeds arising therefrom I do hereby give, devise and bequeath unto the Board of Trustees of the Protestant Hospital Association of Columbus, Ohio, in trust for the following purposes, to-wit: To be by said Board of Trustees kept loaned out on good first mortgage on real estate of at least double the value of said loan, interest to be payable annually or semi-annually, or to keep the same safely invested in good bonds, and the net proceeds arising therefrom are to be used by said Board of Trustees in defraying the actual and necessary expenses of any unfortunates who may come or be sent to said Hospital Institution for treatment who are unable to pay said expenses themselves, thereby constituting a permanent fund for that purpose and for no other purpose whatever, and to be known as "The Mrs. R. M. Johnson Protestant Hospital Association Fund."

The pleadings disclose that Maud M. Griffin died on August 12, 1929, leaving no issue of her body. White Cross Hospital Association of Ohio succeeded to the rights of the Protestant Hospital Association by change of name. The decedent's estate was administered in the Probate Court of Champaign County, Ohio, and the White Cross Hospital Association claimed a transfer of title to the land by virtue of a certificate of transfer issued by the Probate Court of that county.

As we have hereinbefore noted, the various defendants claim that the Probate Court of Champaign County had the sole jurisdiction to carry out the provisions of the will and to enforce the conditions thereof. We have been furnished with a copy of the Court's decision and we find therein the following language:

"The Court further finds that the said White Cross Hospital Association and its Board of Trustees are fully empowered under the law to act as such trustees of said fund in accordance with Item 8 of said will without being further appointed or qualified in the Probate Court of Champaign County or any other court or filing any bond in said Probate Court or any other court and to administer the said trust without making any report to the Probate Court of Champaign County and the Court finds all the other issues joined in the pleadings in favor of plaintiff and against the defendants."

Another question has been raised by the petitioner and that is: What legal entity answers the description of Trustees of White Cross Hospital? The corporate name of the White Cross Hospital is the White Cross Hospital Association of Ohio. The Board of

Trustees have charge of the management of same, but the title to the property is in the Board of Directors. Strictly speaking there are no persons who answer the description Trustees of White Cross Hospital. This therefore gives rise to a latent ambiguity, which permits the Court to consider evidence outside of the will to determine the intention of the testatrix. In clearing this latent ambiguity we may receive testimony as to the intention of ██ the testatrix, and upon consideration of this testimony we must come to the conclusion that the testatrix meant the White Cross Hospital Association of Ohio, the legal entity which owns and operates that charitable institution situated in the City of Columbus, Ohio.

This Court has been furnished with most exhaustive brief prepared by able counsel, in which it is contended that the White Cross Hospital Association is an institution of public charity and that the gift does not create a private trust but does create a charitable trust, the administraton of which does not come within the jurisdiction of the probate court. With this contention this Court thoroughly agrees.

Counsel have also called this Court's attention to the fact that other courts of this state have had before them various cases involving gifts by will to municipal corporations or other political bodies for specific uses. Some of these cases grow out of the administration of the Will of Charles McMicken, who died in 1858, leaving a will by which he gave a large amount of property to the City of Cincinnati for the purpose of establishing and maintaining a university by that name, and also with specific direction as to the manner in which said devise was to be applied. The following cases are cited: **Carrell, Auditor, et al. v The State, ex rel Directors of the University of Cincinnati, 11 Oh Ap 281; City of Cincinnati for the University of Cincinnati, v McMicken, et al., 6 C. C. 188;** and Perin v Carey, 16 L. Ed. 701.

Counsel preparing the brief uses the following language:

"The enforceability of the restrictions in the will as to the use of the fund has always been upheld, although none of the cases gives any indication that the City of Cincinnati, or anyone on its behalf, ever qualified as a testamentary trustee, or that the Probate Court had any jurisdiction over the administration of the trust."

Counsel also calls our attention to the cases construing similar bequests to other municipalities, as follows: **Landis v Wooden, 100 Oh St 160; Christy v Commissioners of Ashtabula County, 41 Oh St 711; McIntire's Administrators v City of Zanesville, 17 Oh St 352; Fairfield Township Board of Education v Ladd, Administrator, et al;** and **Scott v Trustees of Marion Township, 39 Oh St 152.**

Counsel has also called our attention to a number of other cases decided by the courts of last resort of other states.

"One of these cases, in which the question was carefully considered, is Dwyer, Executor v Leonard, et al., 100 Conn. 513, 124 Atl. 28, decided in 1924. This action involved the construction of the will of a resident of Hartford, Connecticut, whose estate was under administration in the Probate Court of Hartford County, Connecticut. Item 10 of the will is as follows:

'Tenth: All the rest, residue and remainder of my property, whatever the same may be and whereever situated, I give, devise and bequeath to the New York Association for Improving the Condition of the Poor, said association being located in the City of New York, in the State of New York, and having its office and place of business at 105 East 22nd Street, in said City of New York, to hold the same in trust, and to expend the income therefrom annually in sending poor children residing in any part of said City of New York, in the country during the summer months, and in maintaining them while in the country.'

Some five questions were proposed to the Court involving the validity of this item of the will and the method of administration of the bequest made thereby. The Court upheld the validity of the bequest and the restrictions contained therein. It further held that the will did not create a testamentary trust required to be administered under the supervision of the Probate Court. Item 2 of the syllabus is as follows:

That the testatrix manifestly did not intend, by the terms of the bequest, to set up a special trust of her own to be administered in accordance with directions contained in her will, since there were none, but to make a gift in trust to the Association to be administered by it for the benefit of the described class, without attempting to confer any powers or to impose any limitations upon the trustee which were not already conferred or imposed by its charter.

The Court also stated (paragraph 3 of the syllabus):

That the Association, upon accepting the trust, would be entitled to receive and hold the trust fund without qualifying or accounting as testamentary trustee in the local Court of Probate, being amenable to the courts of New York for its proper administration.

We quote the following from the opinion (pages 519 and 520):

The correct answer to question (c) depends on whether the testatrix intended to make a gift in trust to the corporation to be administered by the corporation for the benefit of the class described, or whether she intended to set up a special trust of her own to be administered in accordance with directions contained in her will. We think there can be little doubt on that point, for no enforcible trust is self-contained in the will. The will describes a class of possible beneficiaries so large that only a fraction of them could have been within the beneficial intent of the testatrix, and the will does not attempt to identify that fraction nor does it direct the trustee to make the necessary selection in accordance with any rule laid down by the testatrix. The testatrix has intentionally left the selection of the beneficiaries to the discretion of the trustee, without attempting to confer any powers or to impose any limitations upon the trustee which were not already conferred or imposed by its charter.

Such a trust is a public charitable trust and is not to be administered according to any directions contained in the will, for there are none; but in aid of the class described according to the charter of the corporate trustee and under the sanction of the laws of the State of New York; and it follows that the trustee, upon accepting

.the trust, will be entitled to receive and hold the trust fund without qualifying or accounting as testamentary trustee in the Court of Probate for the district of Hartford."

Assuming that the Probate Court has no jurisdiction of the administration of said trust, what remedy does any interested person have to prevent or correct an abuse of the trust, or a misdirection or misuse of the corpus or the income arising therefrom? This question is answered by an examination of §340 GC, which contains the following language:

"The attorney general shall cause a proper action to be instituted to enforce the performance of a trust for charitable and educational purposes, and to restrain the abuse thereof, if he deems such action advisable, or, if directed so to do by the governor, the supreme court, the general assembly, or either house thereof. Such action may be brought in his own name, on behalf of the state, or in the name of the beneficiary of the trust, in the court of common pleas of Franklin County, or in the court of common pleas of any county wherein the trust property or any part thereof is situated or invested. The attorney general may refuse to institute such action except when directed by the governor, the supreme court, or the general assembly or either branch thereof; unless some responsible freeholder of the state becomes relator in the cause and liable for the costs thereof. No such action shall abate or discontinue by change of officer; but shall be prosecuted to final judgment or mandate as if no change had occurred."

In summary of our conclusions we therefore find that a trust was created by the will of the testatrix; that the trustee is an institution of public charity; that the administration thereof does not come within the jurisdiction of the Probate Court; that the White Cross Hospital Association takes said property subject to the three restrictions contained in the will; and that the enforcement of said provisions or the prevention of any misuse of the fund contrary to the terms of the will may be accomplished through the Attorney General of the State of Ohio.

The petitioner has raised some other questions which, in the opinion of this Court, are not proper ones to be raised in the present proceedings.

An order may be drawn in accordance with the above decision.