## NELLIE HURLBURT WHITNEY, ET AL.
vs.
## WINTHROP H. WHITNEY, ET AL.

Superior Court Hartford County File #55576

MEMORANDUM FILED JULY 27, 1938.

Hewes, Prettyman & Awalt, of Hartford, for the Plaintiffs.

Kimberley Cheney, of Hartford, for the Defendants.

CORNELL, J. This is a suit for the construction of the last will and testament of Clarence E. Whitney, late of Hartford, deceased, whose estate is in course of settlement in the Probate Court for the District of Hartford. The plaintiffs are the executrices named in the will, viz., Nellie Hurlburt Whitney and Dorothy Whitney Stevens, the former of whom is the testator's surviving wife and the latter, one of his daughters. The named defendants are the deceased's two sons, viz., Winthrop and Lawrence Amos Whitney, and a daughter, viz., Laura Whitney Hawkinson, in addition to whom Nellie Hurlburt Whitney and Dorothy Whitney Stevens are included in their personal, as distinguished from their representative, capacities. These comprise all of the persons who have, or might claim to have, any interest under the testator's will or in, or to, his estate.

The operative provisions of the will, which was drafted by the testator, personally, and executed on January 1, 1930, read as follows:

"1. I desire my executors to first pay all my just debts and the proper charges against my estate.

"2. All the rest and residue of my property, real and personal, I desire incorporated under the Laws of the State of Connecticut, under any suitable name to be determined by my Executors, the Corporation to be so formed that there will be a reasonable number of shares of stock of one grade only, the total number to be determined by my Executors, and all the shares thereof to be of no par value.

"3. I give, devise and bequeath to my wife, Nellie Hurl-burt Whitney, thirty-five (35%) per cent of the total. I give, devise and bequeath to my son, Winthrop H. Whitney, five (5%) per cent of the total. I give and bequeath to my daughter, Dorothy Whitney Stevens, twenty (20%) per cent of the total. I give, devise and bequeath to my daughter, Laura Whitney Hawkinson, twenty (20%) per cent of the total. I give, devise and bequeath to my son, Lawrence Amos Whitney, twenty (20%) per cent of the total."

The estate is inventoried at $950,000, of which the largest single item is stock in The Whitney Manufacturing Company valued at $512,460, the remainder being in the main divided between stocks and bonds in other corporations, real estate and personal effects.

The questions propounded are these:

(a) Do the provisions of said paragraph 2 of said will impose a mandatory duty upon the executrices to form a corporation with the number and character of shares indicated in said paragraph?

(b) If such a mandatory duty is not imposed upon the executrices, does said paragraph of said will impose such a mandatory duty on any one else?

(c) If such a mandatory duty is imposed, what shall be declared to be the objects and purposes of such corporation and who shall be its directors and officers?

(d) If such a mandatory duty is imposed, for how long a period shall. the corporation be continued?

(e) If such a mandatory duty is imposed, can the corporation be dissolved immediately after it is formed?

(f) If such a mandatory duty is imposed, shall the residue be distributed among the legatees according to the percentages specified in paragraph 3 of said will?

(g) If no such mandatory duty is imposed and the residue cannot be distributed among the legatees according to the percentages specified in paragraph 3 of said will, how shall said estate be distributed?

(h) If such a mandatory duty is imposed can the corporation be formed at once with only a nominal capital for the purpose of making possible a distribution of income of the

estate pending a transfer to the corporation of the entire residue?

Of these interrogatories, (a) and (b) submit queries, the answers to which must exert much influence on the advice to be given concerning the others. To paraphrase, these are (1) whether the executrices are required to cause a corporation to be organized to which shall be transferred all of Mr. Whitney's estate which shall remain after the payment of *ante mortem* debts and "proper charges", and, if they are not, then (2) are the named beneficiaries under a duty to do so? These, in turn, have aspects that are twofold, viz., one which relates to the sense in which certain language is used in the will, and, in event that this is determined not to connote a mandatory direction, then whether under the provisions of the will as a whole, the duty exists. Obviously, both of these have concern with the author's testamentary intention; the second, in addition, however, includes the question of whether such a direction, if ascertained to exist, is valid.

The defendants claim that there is no imperative duty imposed either upon the executrices or the beneficiaries to cause such a corporation to be organized. The hearing discloses that the plaintiffs, executrices, are, at least, sympathetic with this contention, from which it is evident that all persons named in the will as beneficiaries, having any interest in the estate or charged with the duty of administering it, are either active proponents of, or nonresistant to that proposition. This circumstance can be permitted to have no persuasive effect upon the conclusions reached here. *Brinsmade vs. Beach,* 98 Conn. 322, 330; *Burnham vs. Burnham,* 101 id. 529, 533. The question is not what those concerned in the estate agree should have been, or should now be, done with the estate, but, only, what disposition the testator intended to make of it. *Burnham vs. Burnham, supra; New Britain Trust Co. vs. Stoddard,* 120 Conn. 123, 126. The obligation devolves upon the Court to give effect to the testamentary intention alone, if valid, as the instrument reveals it, or as it may be ascertained, therefrom, when considered in the light of the circumstances surrounding the testator, when he executed the will. *Catto vs. Plant,* 106 Conn. 236, 240; *Gross vs. Hartford-Connecticut Trust Co.,* 100 id. 332, 335; *Bartlett vs. Sears,* 81 id. 34, 48. In pursuit of this quest even an invalid provision may be considered and, perforce, must be, if it constitutes the entire will. *State Bank & Trust Co. vs. Nolan,* 103 Conn. 308, 330.

Much of the argument advanced depends upon the use of the phrase "I desire" in the second paragraph of the will, with reference to the incorporation of the residue of the estate. It is contended that this is expressive of a mere wish, hope or preference in contradistinction to an imperative direction. In passing, it may be observed, that the same language is employed in connection with the subject of the payment of the testator's "just debts and proper charges against" his estate. A provision of this latter character has significance of a nature hardly capable of more precatory susceptibilities. *Starr vs. Watrous,* 116 Conn. 448; *Higinbotham vs. Manchester,* 113 id. 62, 72. While this observation is not decisive of the meaning in which the same language is used in paragraph 2 of the will, neither is it to be ignored. *Beardsley vs. Johnson,* 105 Conn. 98.

The sense in which words are used may often be determined from the immediate context in which they appear. Where, however, such considerations are not conclusive, their meaning must be discovered by considering them in the light of the general scheme of the will as evinced by the instrument as a whole. *West Haven Bank & Trust Co. vs. McCoy,* 117 Conn. 489, 491. This done, it becomes apparent at once that unless the provisions of paragraph 2 are imperative and so, of testamentary, rather than of mere precatory, character, the testator engaged only in a bootless gesture in executing the instrument, for nowhere in the testament is there a bequest or devise to any person, unless it be a corporation to be organized. This conclusion is not derogated from by the circumstance that the testator employs the word "devise" in the third paragraph of the testament, for "in spite of the use of language commonly appearing in legal documents, the will . . . is plainly the handiwork of someone unskilled in the law." *Frederick vs. Alling,* 118 Conn. 602, 605; *Perry vs. Bulkley,* 82 id. 158, 164, 165.

A construction of a will which attributes to a testator an intention to die intestate obviously poses an anomaly and, of course, offends against reason. Such would be the result if the identification of the testator's purpose were to predicate upon a determination that the second paragraph of the will contains nothing but a hope, wish or desire that a corporation be organized to take the residuary estate, with no alternative or substitutionary disposition in case the persons upon whom such obligation is imposed, deign not to do so. Even in construing one or more particular provisions of a testa-

ment, an interpretation which will give effect to a testamentary disposition is to be preferred to one which will result in partial intestacy. *Citizens & Manufacturers National Bank vs. Guilbert,* 121 Conn. 520, 526, and cases cited in the opinion. Yet more compelling is the presumption that one who executes a will intends to dispose of his estate in a manner different from that in which it would, otherwise, be distributed in event of intestacy. *Ansonia National Bank vs. Kunkel,* 105 Conn. 744, 750; *Houghton vs. Brantingham,* 86 id. 630, 635. It is determined that the provision contained in paragraph 2 of the will is imperative and hence, testamentary, and must be given effect if it be valid. *West Haven Bank & Trust Co. vs. McCoy,* 117 Conn. 489, 494, 495.

The decisive question, then, is whether the testamentary intention as it is disclosed in the will is valid or void. That depends upon (1) whether it contravenes some rule of law or (2) whether if it does not, then, though its broad outlines be definitely limned, yet it is so lacking in essential detail as to be so uncertain, as to defy effectuation. The duty to organize a corporation, if there be one, must be resolved upon the determination of these questions.

The provisions of paragraphs 2 and 3 of the will when considered in the light of the fact that the testament contains no express disposition of the estate to anyone, indicates that the testamentary scheme was this: that the corporation which the testator directed be organized should have all of the residue of his estate and his named beneficiaries, in lieu of receiving any portion of his property, should have stock in such corporation each in such proportion of the entire capitalization as the will designates in paragraph 3.

There is nothing innately or inherently invalid in a testamentary gift either of personalty or realty to a corporation to be created or organized after the death of a testator. *Inglis vs. Trustees of the Sailor's Snug Harbor, etc.,* 3 Peters 99, 115, in which it is said: "The doctrine sanctioned by the court in *Porter's case,* 1 Coke Rep. 24, admits the validity of a devise to a future incorporation." *Burrill vs. Boardman,* 43 N.Y. 254; *Shipman vs. Rollins,* 98 N.Y. 311; *People vs. Simonson,* 126 N.Y. 299, 27 N.E. 380, 381; *Tilden vs. Green,* 130 N.Y. 29, 28 N.E. 880, 882. This is not denied, but rather assumed, in *Cruikshank vs. Chase,* 113 N.Y. 337, 21 N.E. 64, and in *Booth vs. Baptist Church,* 126 N.Y. 215, 28 N.E. 238, both of which cases were decided on other grounds. The

proposition is restated in *St. John vs. Andrews Institute for Girls,* 191 N.Y. 254, 267, 83 N.E. 981, 983, as follows: "There is no reason why property cannot be given to a corporation to be formed after the death of the testator and within the restricted period any more than there is why property should not be given to descendants or other persons thereafter to be born. In determining the legality of the gift there is no distinction between a natural person thereafter to be born and an artificial person thereafter to be organized." See, also, *Matter of Juilliard,* 238 N.Y. 499, 144 N.E. 772, where the validity of this statement is assumed. A similar view is evident in *Swasey vs. American Bible Society,* 57 Me. 523; *Webster vs. Wiggin,* 19 R.I. 73; *Russell vs. Allen,* 107 U.S. 163, and in *First Nat. Bank & Trust Co. of Racine vs. Gold,* 217 Wis. 522, 259 N.W. 260, and is apparently held in this jurisdiction, at least, insofar as charitable corporations are concerned. *Coit vs. Comstock,* 51 Conn. 352; *Tappan's Appeal from Probate,* 52 id. 412, 417; and see, *Storrs Agricultural School vs. Whitney,* 54 id. 342, 347.

Testamentary gifts to corporations to be organized after a testator's death are (unless exempted therefrom) however, like all other bequests or devises, subject to the operation of the rule or statute (as the case may be) against perpetuities, or, as it is put in some of the authorities, the rule against the suspension of title in such manner that no person in possession has the power of alienating it during a period measured by such rule or statute. This is what is meant by the "restricted period" mentioned in the quotation from the opinion in *St. John vs. Andrews Institute for Girls, supra.* And this, in turn, makes the validity of such gifts as made in a particular will dependent upon whether they offend against such statute or, as in Connecticut, the rule against perpetuities. It is, hence, generally held that if the devise or bequest be one *in praesenti* to a corporation, which is nonexistent, at the time of, but to be created, or organized after the death of a testator, it is void. 68 C.J. Wills §148, citing *Leslie vs. Marshall,* 31 Barb. (N.Y.) 560 and *Literary Fund vs. Dawson,* 10 Leigh (37 Va.) 147, 153; *Zeisswees vs. James,* 63 Pa. 465; *In re Boulevard,* 42 Pa. Super. 372, affd. 230 Pa. 491, 79 Atl. 716; *Burrill vs. Boardman, supra; Inglis vs. Trustees of the Sailor's Snug Harbor, supra.* It would seem that the same rule obtains in Connecticut. *American Bible Society vs. Wetmore,* 17 Conn. 181, 186, where it is said: "By the principles of the

common law, no title can be created either by deed or devise, so as to vest a *present* legal interest in any person, natural or artificial which has no legal existence." See, also, *Greene vs. Dennis,* 6 Conn. 293, and *Lockwood vs. Weed,* 2 id. 287, 292.

As noted above, the construction accorded the disposition of the residue in the will here under examination is not that of a gift *in praesenti* but one to take effect in *future,* viz., when the corporation is organized, so that its validity depends upon whether the period of suspension of power of alienation of the property involved in any person is such as to offend the applicable rule of law *(Inglis vs. Trustees of the Sailor's Snug Harbour,* 3 Peters, 99; *St. John vs. Andrews Institute for Girls,* 191 N.Y. 254, 83 N.E. 981; *Tilden vs. Green,* 130 N.Y. 29, 28 N.E. 880; *Shipman vs. Rollins,* 98 N.Y. 311; *Burrill vs. Boardman,* 43 N.Y. 254; *Coit vs. Comstock,* 51 Conn. 352, 383; *Storrs Agricultural School vs. Whitney,* 54 id. 342, 346; and see, *Tappan's Appeal from Probate,* 52 id. 412, 417), or, more consonantly with judicial expression in Connecticut, whether the beneficial interest as well as the legal title must, under the will, vest within the period limited by the rule against perpetuities.

In treating of the questions thus far discussed, the authorities cited or quoted from have made no distinction between private and charitable corporations, although all of them with the exception of *In re Boulevard, supra,* were of the last mentioned species. However, granted that a private corporation has, or acquires, power to take by devise, no reason can be discerned for any differentiation between it and a charitable corporation in this respect. No such distinction, apparently, was suggested or recognized, in *Palmer vs. Neely,* 162 Ga. 767, 135 S. E. 90, where (citing inter alia, *Burrill vs. Boardman, supra,* and *St. John vs. Andrews Institute for Girls, supra)* a devise and bequest to executors to be by them transferred to a corporation to be organized was held valid under the Georgia Code.

Since these cases were decided, however, either by statute, as in some jurisdictions, or, as here and in some others, by judicial improvisation, the statute, or rule, against perpetuities is no longer applicable to testamentary gifts for charitable purposes *(Pierce vs. Phelps,* 75 Conn. 83, 86, 87; *Brooks Bank & Trust Co. vs. Beers,* 120 id. 477, 481; *City National Bank vs. Bridgeport,* 109 id. 529, 543, 544), but, of course, continues in effect insofar as private dispositions of property are con-

cerned, and so would ordinarily apply to a gift to a private corporation to be organized. However, the testamentary direction here under consideration is that the designated corporation be organized "under the laws of the State of Connecticut." Whether this language be sufficiently inclusive to comprehend the chartering of a corporation by special act of the General Assembly, there is no occasion to inquire. It aptly describes one to be brought into being under section 3395 of chapter 191 of the General Statutes, Revision of 1930, in accordance with which "Any three or more persons may associate to form a corporation for the transaction of any lawful business." Of such a situation, although it was dicta, the opinion in *People vs. Simonson,* 126 N.Y. 299, 308, 27 N.E. 380, 382, says: "If the bequest were to a corporation to be created by the trustees of the will and which could be at once incorporated and organized under the general law, a new and interesting question would be presented.. It might very well be said in such a case, that as it would be the duty of the trustees of the will to act at once, in procuring the incorporation, the delay in the incorporation would be but a mere incident to a certain result." Yet more liberal was the view taken in *Coit vs. Comstock,* 51 Conn. 352, 382, 383, where the bequest, though for a charitable use, was to a testator's executors to hold, manage and receive the income thereof, until an act of incorporation could be obtained from the General Assembly of the State of Connecticut, with such power as might be necessary to carry into full effect, the object of the bequest. The opinion (p. 383), noting that "the testator intended that the property should remain in the hands of his executors but a short period of time," and that the act of incorporation "was to be procured as soon as it could be done", concluded "that a reasonable time only for the act to be obtained was contemplated by the testator." The disposition was held not void as contravening the then statute against perpetuities, although there could, of course, be no certainty that the General Assembly would pass the special act required. See *Belfield vs. Booth,* 63 Conn. 299, 307.

The right to incorporate under the general statute laws of this State is absolute, provided only that the purpose be a lawful one, and the statutory requirements be complied with. The procedure outlined is devoid of even propensity toward delay and need wait upon the discretion of no person, official or otherwise. It was the testator's indubitable intention that

a certificate of incorporation be filed and the organization of a corporation caused to be effected as soon as the time limited for presentation of *ante mortem* claims had expired and such debts, taxes and all other administration expenses and charges had been paid. No reason, legal or otherwise, appears to prevent the carrying out of this direction, at least, within a reasonable time following the noted events, even though that be but a matter of days. Beyond doubt, this must certainly occur within a period of 21 years and such delay, if any, as might be or has been encountered cannot be said to relate to the uncertainty of the event, but only to circumstances arising from other sources. It is the conclusion, therefore, that the provisions of paragraph 2 of the will which (as determined here impose an imperative duty upon the executors) do not contravene the rule against perpetuities but, are on the contrary, notwithstanding and insofar as the same is concerned, valid.

The foregoing, it is believed, attributes to the will the benefit of every reasonable consideration and presumption which may incline to uphold its validity, insofar as the testator's general intention is concerned and the manner in, and the instrumentality by, which the testator sought to effectuate his purpose. Notwithstanding all of which, however, it must be determined that the testamentary plan fails, not because of any vice, inherent within the scheme, itself, but because, from lack of specific direction it is impossible to effectuate it. This conclusion is reached because there is nowhere in the will any description of the function that the contemplated corporation is to play with respect to the estate bequeathed and devised to it, whether arising from a designation of the specific powers that the corporation when organized is to be clothed with or, even, as derived from a deposit of authority with the executors or any other person to determine what such powers shall be. It is thus distinguishable, for example, from the will examined in Palmer *vs. Neely,* 162 Ga. 767, 136 S.E. 90, and the other cases cited herein. All that, in reality, is provided, is that a corporation shall be caused to become into being and the residue of the estate shall be transferred to it but what such corporation shall do with the property after it receives it is a subject as to which there is not only no direction but, also, nothing from which, by inference or otherwise such direction can be ascertained. It is the duty of Courts to construe wills, not to make them. Obviously, this forfends

against mere speculation as to what a testator intended and the transmutation of conjecture into attributed intention by the alchemy of judicial interpretation. This, of course, connotes that a testator, at least, say something concerning essential elements of his selected method of disposing of his property, from which, without drawing upon mere imagination, the Court may be enabled to reach a conclusion concerning the reasonable probabilities. While it may be presumed that the testator intended that the corporation should be empowered to act for a lawful purpose (in contradistinction, e.g., to an unlawful one) yet the diversity of lawful purposes for which a corporation may be organized is such that in the absence of some clue to the testator's design, the Court is impotent to aid in effectuating what must otherwise appear to be his secret intention.

Reference to a memorandum dictated by the testator to his secretary on the same day that he executed the will shows that even Mr. Whitney, himself, had no clear conception of what it was he was to accomplish by causing the residue of his estate to become vested in a corporation to be organized after his death beyond "keeping everything together." A note of tentativeness is discernible in his statement: ". . . the writer is working on a program with Mr. Ralph O. Wells, Attorney, concerning his personal will which he hopes before long may be more perfect, reasonable or sensible than any of the forms of will which the writer has used up to this date. . . . After such a will is executed he will hope through additional study once or twice a year, perhaps, to make further improvements and execute new or later wills to cover such improvements."

There is uncertainty, too, evident in the discourse in the memorandum upon the difficulty of the problem facing the testator and his explanation therein that the will here under examination was intended to fulfill the function of coping with the "emergency" which would be caused by his sudden demise before the testament which he expected would eventuate from his attorney's efforts and his own could be executed, especially as supplemented "by certain advice or recommendations to Mrs. Whitney." No communication concerning the disposition of his estate was ever made by Mr. Whitney to his wife following the execution of the will and had it been, its subject matter could not be given testamentary effect. *Bryan vs. Bigelow,* 77 Conn. 604, 615; *Birge*

*vs. Nucomb,* 93 id. 69, 72, 73. Even though the memorandum in question, which was unsigned and unattested, contained statements which might explain the purpose for which the corporation was to be formed and the powers which the testator wished it to have and exercise, still it could be of no aid in detecting the testamentary intention, in the presence of the complete void in which that subject is left in the will. *Sadler vs. Sadler,* 107 Conn. 409, 414; *Strong vs. Strong,* 105 id. 76, 80.

A gift to a corporation not possessing powers appropriate to the effectuation of an expressed testamentary intention is void. *Tappan's Appeal from Probate,* 52 Conn. 412, 417. Mr. Whitney's will contains neither a description of the manner in which he would have his estate dealt with (from which an inference might be drawn as concerns the authority which he conceived the contemplated corporation should possess) nor any intimation to his executrices or others as to what powers they should insert in a certificate of incorporation under the general statutes or otherwise. As the authorities which such a corporation should have must needs exert a definite influence upon the management, future career and ultimate destination of the estate, the uncertainty is fatal to the validity of the provision and, as the will is drawn, to the testament in its entirety.

In this connection, discussion is purposely omitted with reference to the claim that the provision is void for uncertainty on the theory that the will provides for, or its provisions are analogous to, an attempt to create a trust. A devise or bequest to take effect in the future upon the creation or organization of a corporation does not constitute a trust. *Pierce vs. Phelps,* 75 Conn. 83, 85; *Connecticut Junior Republic Assoc., Inc. vs. Litchfield,* 119 id. 106, 114. The uncertainty exists here in the failure to identify the person, artificial to be sure, to which the disposition is made and the assurance that that beneficiary whose personality could only be recognized by the powers and authorities bestowed upon it, can never have being. *Hughes vs. Daly,* 49 Conn. 34.

In the absence of any other express disposition of the testator's estate or any alternative or substitutionary bequest or devise in event that the gift of the residue to the contemplated corporation should be found invalid, such residue becomes and is to be administered and distributed as intestate estate. *Home Trust Co. vs. Beard,* 116 Conn. 396, 398; *Nel-*

son vs. Pomeroy, 64 id. 257, 261, 262; Sumner vs. Westcott, 86 id. 217, 222; Bridgeport Trust Co. vs. Parker, 97 id. 245, 250.

For the reasons noted the questions propounded are answered and the executrices are advised as follows:

Questions (a) and (b)—No; question (f)—No; question (g) —as intestate estate. In view of the conclusions reached, no answers are required to be or can be given to questions (c), (d), (e) and (h).

When this cause was presented, the Court suggested that the questions involved should be reserved for the advice of the Supreme Court of Errors. In the absence of authority directly in point in this jurisdiction on the pivotal one of these, it is still felt that the opinion of the court of review should be had and should be so invoked by appeal taken from this decision by the executrices. See Belfield vs. Booth, 63 Conn. 299, 309.